**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **RIDGE BENEFIELD, on behalf of itself and all others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.: 1:25-00009-JB-N** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE CITY OF FAIRHOPE, ALABAMA a Municipal Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**RENEWED MOTION TO REMAND**
**AND MEMORANDUM IN SUPPORT THEREOF**

Plaintiff RIDGE BENEFIELD respectfully moves the Court to remand this case to the Circuit Court of Baldwin County, Alabama, pursuant to 28 U.S.C. § 1447 and 28 U.S.C. § 1341. In support of this Motion, Plaintiff states as follows.

## Introduction

This case was filed on December 3, 2024, in the Circuit Court of Baldwin County, Alabama. Plaintiff asserted six claims for relief against Defendant, on behalf of himself and a similarly situated class. In plain terms, the Complaint asserts that Defendant unlawfully generates revenue through the imposition of an "impact fee" on most new developments within the City of Fairhope. The Complaint alleges that

Fairhope's "Impact Fee" ordinance is unconstitutional under various precedents, including *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994), because the fees it imposes lack the constitutionally mandated relationship to the actual impacts of proposed development. *See also Sheetz v. Cnty. of El Dorado, California*, 601 U.S. 267 (2024) (Ruling that the *Nollan / Dolan* framework applies to municipal impact fee exactions).

The determinative question on Plaintiff's motion to remand is whether the charges levied pursuant to Fairhope's "impact fee" ordinance are considered fees or taxes for purposes of the Tax Injunction Act, 28 U.S.C. § 1341, *et. seq*. (the "TIA"). Plaintiff submits that the City's "impact fees" are unauthorized taxes, and that the case must be remanded to the Baldwin Circuit Court pursuant to the TIA.

## **Factual Background**

Fairhope has adopted three successive impact fee ordinances, but the facts pertinent to remand are substantially the same under each ordinance.[1] The City hired a consulting firm, TischlerBise, to prepare "impact fee studies" in anticipation of adopting each of its three impact fee ordinances. *See* Exhibit 1, Cortinas Dep., at 18:1-15. Those studies looked at the nature of growth and development in Fairhope,

[1] The TischlerBise Study and Ordinance 1625 (attached hereto as Exhibits 2 and 3, respectively) were those in effect at the time Plaintiff paid his impact fee to the City of Fairhope.

and proposed "maximum supportable" impact fees for four classes of projects: Police, Fire, Parks & Recreation, and Transportation. *See, e.g.,* Exhibti 2, 2018 TischlerBise Study, at 2 (stating, "The impact fees calculated for Fairhope represent the highest, or maximum allowable, amount feasible for each type of applicable land use.") Fairhope adopted successive impact fee ordinances after receiving each of the TischlerBise's studies. In each instance, the City used TischlerBise's "schedule" of "maximum supportable" impact fees as the measure of fees to be assessed against new development within the City. (*See* Exhibit 1, Cortinas Dep., at pp. 30-32; *and* Exhibit 3, Fairhope Ordinance 1625, p. 8).

Fairhope does not consider any proposed project's actual impacts before it assesses an impact fee. Instead, all developments that are required to pay an impact fee pay a one-size-fits-all fee, corresponding to the development's "class" as shown on the City's "Impact Fee Schedule." *See* Ex. 1, Cortinas Dep., at 32; Ex. 3, Ordinance 1625, p. 8). However, if the impact fee required by the schedule exceeds 1% of the combined value of the proposed building and the land upon which it sits, the City imposes an impact fee equal to 1% of the combined value of the proposed building *and the land upon which it sits*. *See* Exhibit 1, Cortinas Dep., at 37-38. This means that projects with identical impacts could pay very different fees, solely due to their respective, underlying land values.

Kimberly Creech, head of Fairhope's Finance Department, testified that all impact fee revenues are initially deposited into the City's "depository account," then transferred to a separate, interest bearing account exclusively designated for impact fees. Ex. 4, Creech Dep., at 33:21-35:17. Mrs. Creech meets with the mayor and various department heads, as needed, to determine how impact fee revenues will be spent. *Id*. at 25:21-30:5. The City has no checklist, rubric, or other formalized document to guide it in determining whether a particular expense qualifies to be funded with impact fee revenues, and the decisions appear to be by *ad hoc* internal discussions among Mrs. Creech, the mayor, and the City's various department heads. *Id*. The City fails to track each fee in a way that allows the payor to know the specific project(s) to which his or her impact fee has been allocated. This makes it impossible to know whether an individual payor's fee is actually spent on projects that offset attributable to his or her development. *See id*. at 31:10-32:17.

## **Argument**

This matter should be remanded to the Baldwin Circuit Court because Fairhope's "impact fees" are more properly characterized as "taxes." The TIA, enacted in 1937, provides that the "District Courts shall not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The enactment of the TIA did not represent the creation of new law from

whole cloth. Rather, it codified a long-standing prudential rule that federal courts restrain themselves from interfering in matters of State revenue collection. *See, e.g., Dows v. City of Chicago*, 78 U.S. 108 (1870). The TIA codified the formerly prudential rule as a matter of subject matter jurisdiction. *Moe v. Confederated Salish & Kootenai Tribes of the Flathead Reservation*, 425 U.S. 463, 470 (1976).

The Supreme Court of the United States summarized the background of the TIA as follows:

> The statute has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations. This last consideration was the principal motivating force behind the Act: this legislation was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes.

*Rosewell v. LaSalle National Bank*, 450 U.S. 503, 522 (1981) (internal citations omitted). The TIA prohibits federal courts from granting injunctive relief, and from entering declaratory judgments. *State of California v. Grace Brethren Church*, 457 U.S. 393 (1982).

Whether an exaction is a tax under the TIA is a question of federal law, to be determined in accordance with the congressional policies underlying the Act. *Robinson Protective Alarm Co. v. City of Philadelphia*, 581 F.2d 371 (3d Cir. 1978). That policy is to promote comity and to afford the states the broadest independence,

consistent with the federal constitution, in the administration of their affairs, particularly revenue raising. *Wright v. McClain*, 835 F.2d 143, 144 (6th Cir.1987).

The Parties appear to agree on the framework for identifying taxes vs. fees. “The classic fee is imposed (1) by an agency, not the legislature; (2) upon those it regulates, not the community as a whole; and (3) for the purpose of defraying regulatory costs, not simply for general revenue-raising purposes.” *Williams v. City of Orange Beach, Ala.*, 2020 WL 7634799, at *5 (S.D. Ala. Nov. 24, 2020), *report and recommendation adopted*, 2020 WL 7634055 (S.D. Ala. Dec. 22, 2020). A Fifth Circuit opinion summarized the test similarly:

> [T]he classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme. The classic tax is imposed by a state or municipal legislature, while the classic fee is imposed by an agency upon those it regulates. The classic tax is designed to provide a benefit for the entire community, while the classic fee is designed to raise money to help defray an agency's regulatory expenses.

*Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1011 (5th Cir. 1998). Fairhope’s “impact fees” are properly considered taxes under this analysis.

Fairhope’s impact fees were imposed by its City Council—“the municipal legislature”—and not by some other agency. *Home Builders Ass'n of Mississippi*, 143 F.3d at 1009. The first prong of the analysis thus mitigates in favor of finding that the City’s impact fees are taxes. The second prong of the analysis mitigates in

favor of finding a fee, because impact fees are imposed on a class of persons—those engaging in new construction—and not on the community as a whole. The third element of the analysis requires the Court to determine whether the City's impact fees are imposed, "for the purpose of defraying regulatory costs," or whether Fairhope uses them, "simply for general revenue-raising purposes." Fairhope's impact fees are so poorly tied to the actual impacts of new development that they cannot be considered to "defray regulatory costs." Perhaps most obviously, this is because it is impossible to know which fees fund which projects. This analysis is tied closely to the merits of the case.

The third element of the tax-vs.-fee analysis indicates that the City's impact fees should be considered taxes for purposes of analysis under the TIA. This is because the individual fee assessments made under the City's impact fee scheme bear little to no relationship to "the costs directly attributable to new development." *Williams*, 2020 WL 7634799, at *5. Aside from the generalized findings and "maximum supportable" fee structure proposed in the TischlerBise studies, the City has undertaken no meaningful inquiry into any particular project to ensure that the fees assessed are "related in nature and extent" to the actual impacts of the development fin question. Rather, Fairhope charges a flat fee to each new development, regardless of its particular attributes, pursuant to the Impact Fee Schedule. Compounding this problem, in an effort to comply with the enabling

legislation's "cap" on impact fees[2], Fairhope charges different fees for similar developments based solely on the value of the underlying real estate. This result occurs when the "scheduled" impact fee exceeds one percent of the combined value of the proposed new construction and the land it will be built on. In those instances, the City multiplies the combined value of the land and the proposed building by .01, and the result is the impact fee that must be paid in order to receive a building permit.

The third prong of the tax-vs.-fee analysis asks whether the alleged "fees" are designed to "defray regulatory costs." That is not what Fairhope's impact fee scheme does in practice, because the fees bear no meaningful relationship to any "regulatory costs" attributable to the impacts of the new development. And, as noted above, the City fails to track its impact fees in a way that would even allow such an analysis to occur. Instead, it applies the same impact fee to each new-construction project within the City limits, without making any individualized inquiry into the actual, real-world impacts of the development under consideration. Making things worse, the only time

---

[2] The enabling legislation allowing municipalities in Baldwin County to charge Impact Fees is codified at Ala. Code § 45-2-243.80. It provides in part that, "An impact fee [may not] exceed one percent of the estimated fair and reasonable market value of the new development after completion." Ala. Code § 45-2-243.84. While that statutory cap is lawful as a legislatively-determined *upper threshold* for fee assessments, the enabling legislation does not authorize Fairhope to include land values in the *substantive calculation* of underlying impact fees. The TIA analysis is tied closely to the merits because the City's failure to tie the fees to actual impacts violates *Nollan* and *Dolan's* prescriptions for lawful exactions.

Fairhope deviates from this relatively uninformed process is when the scheduled fee would exceed 1% of the expected value of the land and building once completed.

The *Williams* Court found that Orange Beach's impact fee ordinance suffered from the same design flaw:

> Nor have any of the fees been calculated with the specific impacts of a proposed development in mind. This is critical to the Tax Injunction Act analysis because the City has undertaken no individualized inquiry of the impacts of any specific, proposed development before imposing an impact "fee." Rather, in computing fees, the City has relied exclusively on the Study's "maximum supportable fee" determination . . . Moreover, the Study spoke only in general terms about the costs anticipated, future growth was expected to have on the City. The Study did not speak to the specific impacts of any proposed development, and the evidence does not indicate that the City undertook any such analysis prior to charging any impact fee since 2006. This lack of correlation between the actual impacts of new development and the fees assessed to developers supports the finding that these "fees" lack a regulatory purpose, and that they are not calculated to offset the costs "directly attributable to" new development.

*Williams*, 2020 WL 7634799, at *5. Because Fairhope cannot demonstrate that the *amounts* of its impact fees correspond to the *actual impacts* of proposed developments, the third prong mitigates in favor of a finding that Fairhope's Impact Fees are actually taxes.

***a. Home Builders Ass'n of Mississippi, Inc. v. City of Madison.***

The Fifth Circuit Court of Appeals analyzed the TIA's intersection with impact fees in *Home Builders Ass'n of Mississippi, Inc. v. City of Madison*. There, the City of Madison adopted an ordinance imposing a $700 "impact fee" for each

proposed residential dwelling unit. 143 F.3d at 1009. Madison's ordinance required that impact fee revenues be spent, "consistent with a contemporaneously-adopted public improvement plan that was designed to guide the future development of public facilities." *Id.* The Court quoted the following portion of Madison's ordinance:

> funds collected . . . shall be used for street improvements, fire department improvements, police department improvements, and parks and recreation improvements as outlined in the [public improvement plan].... This Ordinance shall be used for the purposes of implementing and funding the [public improvement plan] and to otherwise further the protection and promotion of the public health, safety and welfare of the City of Madison and its citizens and to regulate the adverse effects of rapid residential development by insuring adequate public facilities and services to present and future residents of the City.

*Home Builders Ass'n of Mississippi*, 143 F.3d at 1012. The Fifth Circuit ruled that Madison's impact fee ordinance levied taxes, and dismissed the case under the TIA, because. The Court stated, "it is difficult to imagine that an ordinance designed to protect and promote the public health, safety and welfare of an entire community could be characterized as anything but a tax. Furthermore, Madison's impact fee ordinance does not bear any resemblance to other ordinances and statutes that we and other circuits have construed to impose fees." *Id.* at 1012.

Revenues under Fairhope's impact fee ordinance are spent on the same four categories as the revenues in *Madison*, which account for almost all City services: Fire, Police, Transportation, and Parks and Recreation. Plaintiff respectfully submits

that Fairhope's "impact fee" ordinance is, in fact, an ordinance of taxation because it raises revenue for nearly all city services. The Fifth Circuit's rationale in *Home Builders* is persuasive here. Plaintiff requests that the Court reach the same conclusion and remand this case to the Baldwin Circuit Court.

***b. Lightwave Technologies, L.L.C. v. Escambia County, and additional persuasive authorities.***

This Court addressed the TIA's applicability in *Lightwave Technologies, L.L.C. v. Escambia County*, 43 F.Supp.2d 1311 (S.D.Ala. 1999). There, Judge Hand evaluated Escambia County's $1.00-per-linear-foot fee on companies installing transmission lines or pipes within the County's right of way. The proceeds of that fee were placed in the County's Gasoline Tax Fund, along with the tax revenues generated by the County's gasoline tax. The use of that Fund was restricted to road and bridge construction and repair and paying the County Engineer's salary. *Id*. at 1313. Escambia County sought to dismiss the federal court action, relying on the Tax Injunction Act's jurisdictional bar. In response, Lightwave argued that the Court's exaction was a "regulatory fee" rather than a "tax under State law" because "concern over maintenance and repairs were the principal motivating factor in imposition of the user fees." The Court noted that Escambia County applied the same fee on pipeline installation as it imposed on the installation of optical fiber, which was much less disruptive to the surface. The Court held that "[t]his lack of

correlation between expected cost to the county and the magnitude of the fee militates in favor of a finding that the right-of-way fee is a revenue-raising 'tax under State law.'" *Id*. at 1314. The court went on to hold that "the ultimate use of the revenue points strongly to" a tax under State law, because the proceeds were deposited into the Gasoline and Tax Fund and used for road and bridge construction – expenditures unrelated to telecommunications and "undisputedly for the benefit of the public as a whole." *Id*. at 1315.

The facts of this case show a similar "lack of correlation between expected cost to the [City] and the magnitude of the fee." Fairhope's impact "fees" are expended on a wide swath of City services that effectively benefit the "public as a whole." Fairhope's impact "fees," like those in *Lightwave*, are to be considered "taxes" under the TIA, and this mater should be remanded to the Baldwin Circuit Court.

A conclusion of a "tax under State law" has been found in the overwhelming majority of cases involving all manner of fees where the fee was not directly and provably tied to corresponding costs. *See, e.g., Thrope v. State of Ohio,* 19 F.Supp.2d 816 (S.D.Ohio 1998) (disabled parking permit fee of $5.00 was not a "tax"); *Lussier v. State of Florida,* 972 F.Supp. 1412 (M.D.Fla.1997) (disabled parking permit fee of $15.00, with proceeds applied to education and transportation, was a "tax"); *Schneider Transport, Inc. v. Cattanach*, 657 F.2d 128 (7th Cir.1981) (registration

fees used for highway construction constituted a "tax under State law" immune from federal court review under Tax Injunction Act); *Bland v. McHann*, 463 F.2d 21, 28 (5th Cir., 1972) (African American claims that their properties were valuated differently than Caucasians was a challenge to a tax under state law); *Burris v. City of Little Rock*, 941 F.2d 717, 719 (8th Cir. 1991) (sewer assessments constituted taxes under state law); *Kathrein v. City of Evanston, Ill.*, 752 F.3d 680, 686 (7th Cir. 2014) (Section 1983 claims related to demolition fee were barred in federal court under Tax Injunction Act); *Advertiser Co. v. Wallace*, 446 F.Supp. 677, 679 (M.D. Ala.1978) (Tax Injunction Act precluded federal jurisdiction over damages claims as well as injunctive relief related to certain tax assessments on the plaintiff newspaper); *Groff v. State of Md.*, 639 F.Supp. 568, 573 (D.Md. 1986) (accord).

## Conclusion

Plaintiff submits that Fairhope's "impact fee" ordinance is an ordinance of taxation because the "feees" in question bear no rational relationship to the developmental impacts they are supposed to offset. Furthermore, the City's impact fee revenues are expended on nearly all City services: Police, Fire, Parks and Recreation, and Transportation. As such, Plaintiff respectfully requests an order remanding this case to the Circuit Court of Baldwin County, Alabama.

*/s/ Grant Blackburn*
GRANT BLACKBURN

BLACKBURN & CONNER, P.C.
P.O. Box 458
Bay Minette, AL 36507
251-401-4630
gblackburn@blackburnpc.com

J. THOMAS PILCHER, IV
PILCHER & GRISSOM, LLC
201 East Second Street
Bay Minette, AL 36507
jtp@pglawllc.com

KRISTOPHER O. ANDERSON
JOHN PARKER YATES
ROBERT S. WALKER
YATES ANDERSON
4851 Wharf Parkway, Ste D-230
Orange Beach, AL 36561
251-500-4853
kris@yatesanderson.com
parker@yatesanderson.com
robert@yatesanderson.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2025, a copy of the foregoing was served by regular U.S. Mail upon the following:

Christopher O. Williams, Esq.
W. Bradley Smith, Esq.
HAND ARENDALL
HARRISON SALE LLC
P.O. Box 1499
Fairhope, AL 36533
cwilliams@handfirm.com
bsmith@handfirm.com

Emily B. Van Haneghan, Esq.
HAND ARENDALL
HARRISON SALE LLC
P.O. Box 123
Mobile, AL 36601
evanhaneghan@handfirm.com

*/s/ Kristopher O. Anderson*
KRISTOPHER O. ANDERSON